**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KATRINA LIZBETH SIMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-00068** |
| | ) | **Judge Aleta A. Trauger** |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

Plaintiff Katrina Sims brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's denial of her application for disability insurance benefits under Title II of the Social Security Act. Currently pending is Sims' Motion for Judgment Based on the Administrative Record ("Motion for Judgment") (Doc. No. 13), filed along with a supporting Memorandum of Law (Doc. No. 14). The Commissioner of Social Security filed a complete copy of the underlying Administrative Record ("AR") (Doc. No. 8) and a Response to the Motion for Judgment (Doc. No. 17). The plaintiff filed a Reply in further support thereof. (Doc. No. 19.) The Magistrate Judge to whom this matter was referred has issued a Report and Recommendation ("R&R") (Doc. No. 20), recommending that Sims' motion be denied. Sims filed timely Objections (Doc. No. 21), to which the Commissioner has responded (Doc. No. 22).

For the reasons set forth herein, the plaintiff's Objections will be overruled, and her motion will be denied.

## I. LEGAL STANDARDS

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and

recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the context of a case seeking social security benefits, the court must "uphold the ALJ's decision unless the ALJ failed to apply the correct legal standard or made findings that are unsupported by 'substantial evidence.'" *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022), *cert. denied sub nom. Moats v. Kijakazi*, 143 S. Ct. 785 (2023); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

"'[S]ubstantial evidence' is a term of art, . . . [a]nd it is not [a] high threshold." *Id.* (internal quotation marks and citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This standard requires '"more than a mere scintilla'" but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); *see also Biestek*, 587 U.S. at 103. The court does not resolve conflicts in the evidence or revisit questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the court will not reverse findings of an ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d

387, 390 (6th Cir. 2004).

## II. BACKGROUND

In the R&R, the Magistrate Judge sets forth in detail the plaintiff's relevant medical history, the ALJ's findings, the parties' positions, and the applicable legal standards, before concluding that the ALJ's determination of the plaintiff's residual functional capacity, and her assessment of the persuasiveness of the opinions of the plaintiff's treating physician and the state agency consultants, are supported by substantial evidence in the record. The Magistrate Judge recommends denying the plaintiff' Motion for Judgment.

## III. DISCUSSION

The plaintiff raises two objections to the R&R, which effectively mirror the two issues raised in her Motion for Judgment: (1) that the R&R incorrectly concludes that the ALJ did not err in evaluating and explaining her analysis of the opinion of the plaintiff's treating surgeon, Dr. Michael McNamara, and "glosses over" the ALJ's error regarding the physical therapy notes and the inaccuracy of the ALJ's conclusion that the plaintiff's condition had improved over time; and (2) that the R&R incorrectly recommends finding no error in the ALJ's analysis of the administrative medical findings of Dr. Ok Yung Chung and Dr. Robert Hughes. (Doc. No. 21 at 1, 3.) In his Response to the Objections, the Commissioner reiterates the arguments raised in response to the Motion for Judgment—that the ALJ's resolution of the conflicts between the various medical opinions complied with the applicable regulations and is supported by substantial evidence. (Doc. No. 22 at 2.) He also argues that the plaintiff's Objections amount to "nothing more than an attempt to have the Court reweigh the evidence." (*Id.* at 3.)

The court has reviewed the record as a whole in light of the plaintiff's Objections and concludes that the Magistrate Judge did not err in finding that the ALJ properly applied the law and that her findings are supported by substantial evidence.

### A. First Objection

Dr. McNamara, the plaintiff's treating surgeon, assessed the plaintiff in March 2021 (approximately eighteen months after her lumbar fusion surgery) as being significantly limited in her ability to perform work-related activities, including that she could perform no lifting over ten pounds, could lift 6 to 10 pounds occasionally and 1 to 5 pounds frequently; that she could occasionally stand, walk, or sit and never balance, stoop, kneel, crawl, or climb; that she could only occasionally finger, grasp, push, pull or bend and could never reach overhead, to desk level or below the waist. (*See* AR 1341, Ex. 17F.) The ALJ found that this opinion was not well supported by the treating notes that "generally show good results from the claimant's fusion . . . such that the postural limitations are overly pessimistic." (*Id.* at 2286 (citing AR Exs. 7F, 11F, 15F, and 37F).) She also found that the limitations on reaching were not fully supported, since the records showed "good results from bilateral carpal tunnel releases and shoulder surgery." (*Id.* (citing AR Exs. 11F, 15F, and 24F).) The ALJ noted that, in addition, the opinion was "overly pessimistic when viewed in light of physical therapy notes taken near the time of the opinion. The notes show the claimant as able to perform her desk clerk duties." (*Id.* (citing Ex. 16F).)

The physical therapy notes to which the ALJ referred indeed contain a section entitled "Work Status" with the statement: "The patient's occupation is Desk clerk and is employed full time. She reports that she currently is able to perform all duties." (*Id.* at 1320.) Below that statement is a small chart identifying the plaintiff's "normal work duties" as "Sitting for extended periods" and "Typing/computer operation" and indicating "Yes" under "Currently able to perform?" indicating that she was able to perform both of those duties. This segment is clearly inconsistent with other parts of the notes, where the therapist states that the plaintiff was not working (*id.* at 1319) and that she reported "severe pain" and "difficulty with," among other things, sitting and standing (*id.* at 1332). As the plaintiff argues, this segment was obviously carried over

in error from previous visits and was not updated. (*See* Doc. No. 21 at 2.)

The plaintiff contends that the ALJ erred in relying on the physical therapy notes as "show[ing] the claimant as able to perform her desk clerk duties" and as supporting her assessment that Dr. McNamara's opinion was unpersuasive. The R&R addresses this argument as follows:

> Physical therapy notes from March 10, 2021, confirm that Plaintiff was not working and document bilateral lumbar pain with radiation down the posterior right lower extremity to above the knee with difficulty standing and walking, difficulty bending, difficulty driving, and difficulty with dressing. (Tr. 1319). Thus, to the extent any portions of the Plaintiff's physical therapy notes from 2021 that inaccurately indicate her continuing to perform desk clerk duties [were] referred to by the ALJ, [they] were not relied upon as the ALJ made clear in her written decision that Plaintiff did not work after her 2019 fusion. As such, the undersigned concludes the ALJ properly found Dr. McNamara's opinion unpersuasive.

(Doc. No. 20 at 11–12.)

The plaintiff specifically objects to this finding as "gloss[ing] over the ALJ's error." (Doc. No. 21 at 1.) In addition, she claims that the other medical records on which the ALJ relied, specifically Exhibits 7F, 11F, and 37F, also do not support the ALJ's conclusions. The plaintiff characterizes these exhibits as concerning only the nerve block injections performed by Dr. Zachary Kalb for right shoulder impingement, the right carpal tunnel release by Dr. Jeffrey Kutsikovich, and Dr. Kalb's later administration of facet joint injections. (Doc. No. 21 at 2.)

The plaintiff is only partially correct. Exhibit 7F contains the plaintiff's medical treatment records from the Bone & Joint Institute from March 2020 through August 2020. The exhibit includes documentation of Dr. Zachary Kalb's nerve block injections for the plaintiff's shoulder, but it also includes an encounter note with Dr. McNamara, who also practiced at the Bone & Joint Institute, from June 2020 for a "postoperative visit status post L5-S1 fusion." (AR 559.) At that visit, the plaintiff reported some complaints of back pain and "some residual leg numbness." (*Id.*) Dr. McNamara noted that a lumbar spine exam showed:

> Manual motor testing of the lower extremity is 5/5 in all motor groups . . . .
> Sciatic nerve root tension signs are negative.
> Sensory exam intact to light touch throughout dermatomes.
> Deep tendon reflexes 2+ and symmetric throughout the upper and lower extremities . . . .
> Range of motion in lumbar spine is decreased.
> Range of motion of the hips, knees, and ankles is normal.
> Gait is normal.

(AR 560; *see also id.* at 2278 (ALJ's opinion referencing this visit).) In other words, the findings were relatively mild and support the ALJ's assessment of Dr. McNamara's opinion regarding the plaintiff's work-related abilities as overly pessimistic.

Exhibit 11F indeed includes documentation of Dr. Kutsikovich's carpal tunnel release procedures in December 2020 (left) and February 2021 (right), but it also includes an encounter note pertaining to the plaintiff's visit with Cara Bohrman, PA-C, in October 2020, during which the plaintiff reported both low back pain and neck pain. (*Id.* at 1243; *see also id.* at 2279 (ALJ opinion referencing this visit).) Bohrman noted that the L5-S1 fusion had "resolved [the plaintiff's] radicular pain," though she "admit[ted] to continued low back pain since surgery." (*Id.* at 1243.) The results of a physical exam were basically normal, including normal gait, negative sciatic nerve root tension signs, and "no pain with hip IR/ER, flexion." (*Id.* at 1244.) In addition, Bohrman reviewed recent imaging of the lumbar spine, which showed that the fusion hardware was "well positioned and intact." (*Id.* at 1245.) Although the plaintiff reported a "[r]ecent increase in low back pain and weakness, greatest at the thoracolumbar junction," she was "[n]eurovascularly intact." (*Id.* at 1246.) The plaintiff was advised to engage in "core and lumbar strengthening" and encouraged to continue her weight loss program. (*Id.*) This note, too, supports the ALJ's findings.

Exhibit 15F, on which the ALJ also relied, primarily documents the plaintiff's appointment with Bohrman for review of a lumbar MRI in March 2021. Bohrman again noted that the plaintiff's

"radicular pain had resolved" following her fusion, "until this pain flare," but her physical exam revealed a normal gait and no significant findings, and the MRI showed the canal at L5-S1 "fully decompressed" with "[n]o significant central or foraminal stenosis." (*Id.* at 1308–10.) Bohrman recommended physical therapy. (*Id.* at 1310; *see also id.* at 2279 (ALJ opinion referencing this visit).)

Exhibit 37F primarily concerns the plaintiff's complaint and treatment for lumbar radiculitis *after* her last-insured date of December 31, 2024. (*See, e.g.* AR 2645.) However, it also contains treatment notes from May 2024, where the plaintiff's lumbar range of motion was noted to be normal and pain-free (AR 2667; *see id.* ("Moves easily from sitting to standing position with no pain.")), and June 2024, for evaluation of the plaintiff's complaint of sudden onset (two weeks previously) of "bilateral low back pain with bilateral radicular posterior leg pain." (*Id.* at 2657.) Although she was initially prescribed stretching and physical therapy (*id.* at 2658), a later encounter note shows that Dr. Kalb performed a "bilateral L4-5 transforaminal epidural injection" in November 2024. (*Id.* at 2649.)

In other words, the ALJ's references to these exhibits was not in error, as they contain treatment notes relating to the plaintiff's lumbar spine complaints. The ALJ referred to them in her recitation of the plaintiff's medical history, and they generally support the ALJ's determination that Dr. McNamara's assessment of the plaintiff's ability to perform work-related activities during the relevant time frame was not persuasive. While the ALJ clearly erred in relying on the section of the March 2021 physical therapy treatment notes that incorrectly identified the plaintiff as working and as stating that she was able to perform her job duties, and the R&R somewhat "glosses over" that error, the physical therapy treatment note was not the only basis for the ALJ's assessment. She also cited the above-referenced exhibits. The court therefore finds that the ALJ's

error was harmless, because the ALJ's rejection of Dr. McNamara's assessment is still supported by substantial evidence in the record, including Dr. McNamara's and Cara Bohrman's treatment notes, as well as other practitioners' notes pertaining to the treatment of the plaintiff's carpal tunnel and shoulder pain.

The court does not reach this conclusion lightly. The plaintiff clearly endured numerous medical problems and experienced at least intermittent back pain over the course of the relevant time period,[1] but the ALJ's finding that Dr. McNamara's opinion was "not well supported by the treating notes" is supported by substantial evidence in the record and does not violate 20 C.F.R. § 404.1520c(b)(2).

**B. Objection 2**

The second issue raised by the plaintiff in her Memorandum in support of her Motion for Judgment is that the ALJ did not properly evaluate or explain her evaluation of the prior administrative findings of Drs. Chung and Hughes. Drs. Chung and Hughes, whose record reviews took place in April and October 2020, respectively, found the plaintiff capable of sitting for about six hours and standing/walking for no more than two hours in an eight-hour workday, but that she could occasionally lift as much as twenty pounds and frequently lift ten pounds. (AR 78, 88–89.) They both assessed her as having an essentially unlimited ability to push/pull or reach. (*Id.* at 76, 88.) The ALJ found these opinions "partially persuasive." (*Id.* at 2287.) More specifically, she found with respect to both that their assessments were "generally consistent with the record as a

[1] The Social Security Act defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The plaintiff did not argue in her administrative proceedings, and does not argue now, that she should have been found disabled for at least some continuous twelve-month (or greater) portion of the period between the May 26, 2019 alleged onset date and her last insured date of December 31, 2024.

whole to the date of the prior administrative medical finding" but that "later records indicate the need for greater limitations in reaching and in environmental limitation," and "[m]ore recent records also show generally good results with the fusion, along with a normal gait, no anta[lg]ia, and no balance issues such that the need for standing and walking limitations is overly pessimistic." (*Id.*)

The plaintiff argues in her opening brief that the record does not support the ALJ's assertion that more recent treatment notes generally show good results from the plaintiff's fusion. She contends that, as a result, the ALJ erred in excluding the limitations on walking and standing in Drs. Chung and Hughes' assessments in apprising the testifying vocational expert of the plaintiff's limitations. The plaintiff did not reference the ALJ's assessment of Dr. Frank Pennington. The Commissioner's Response asserts that the ALJ was "confronted with the not uncommon scenario of having conflicting opinion evidence" and evidently "accepted Dr. Pennington's standing and walking findings based on the later submitted records that were inconsistent with Drs. Chung's and Hughes' findings." (Doc. No. 17 at 10–11.) The Commissioner argues that the decision was supported by substantial evidence. (*Id.* at 11.)

In her Reply brief, the plaintiff argues that the Commissioner, "rather than conceding that the ALJ offered no explanation for omitting limitations" assessed by Drs. Chung and Hughes from her residual functional capacity finding, "offers a *post hoc* rationale, suggesting that the ALJ *could* have found the opinion of Dr. Pennington more persuasive." (Doc. No. 19 at 3 (emphasis in original).) The plaintiff argued that such *post hoc* rationalizations are impermissible. (*Id.* (citing *Miller v. Comm'r of Soc. Sec.*, No. 1:22-cv-00045, 2024 WL 1258194, at *8 (M.D. Tenn. Mar. 25, 2024) (Newbern, M.J.)).)

As the R&R notes, the ALJ "accepted Dr. Pennington's standing and walking limitations

based on later submitted records that she found inconsistent with Drs. Chung's and Hughes' findings" but "incorporated greater reaching and environmental limitations." (Doc. No. 20 at 13 (citing the ALJ's residual functional capacity finding, AR 2274).)[2] More specifically, as the R&R observes, the ALJ found that Dr. Pennington's assessment that the plaintiff could stand/walk for a total of four hours and sit for a total of about six hours in an eight-hour workday was "generally consistent with the record as a whole." (*Id.* (quoting AR 2287).) According to the R&R, the ALJ thus "implicitly adopt[ed] Dr. Pennington's assessment of her ability to stand/walk and sit and the assessment of all three as to her weight-lifting limitations, but incorporated greater reaching and environmental limitations." (Doc. No. 20 at 13 (citing AR 2274).)

The plaintiff's Objections reiterate verbatim the argument raised in her Reply: that the Commissioner, "rather than recognizing that the ALJ herself actually offered no explanation for omitting limitations assessed by Dr. Chung and Dr. Hughes from the RFC, . . . offered a *post hoc* rationale, suggesting that the ALJ *could* have found the opinion of Dr. Pennington more persuasive." (Doc. No. 21 at 3.) Again citing *Miller*, 2024 WL 1258194, at *8, the plaintiff insists that the defendant's *post hoc* analysis is impermissible. (*Id.*)

The court does not view the Commissioner's Response as offering a *post hoc* rationale for the ALJ's decision. The Commissioner, like the court, understands the ALJ to have accepted Dr.

[2] The ALJ determined that the plaintiff could

> perform a limited range of light work as defined in 20 CFR 404.1567(b). The claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk up to four hours in an eight-hour workday and can sit for up to six hours in an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, or crawl. The claimant has no need for a hand-held assistive device for ambulation. The claimant can occasionally reach overhead with the right upper extremity. The claimant should avoid concentrated exposure to vibrations, unprotected heights, and moving machinery.

(AR 2274).

Pennington's standing and walking findings. (*See* Doc. No. 22 at 4.) The ALJ clearly stated in her opinion that she found Dr. Pennington's opinion "generally consistent with the record as a whole," except that it was "overly optimistic in terms of environmental limitations regarding vibration," and therefore only "partially persuasive." (AR 2287.) The ALJ's residual functional capacity rejected Dr. Pennington's environmental limitations but adopted Dr. Pennington's findings relating to the plaintiff's ability to walk and sit/stand. As the Commissioner stated, the ALJ was in the position of weighing conflicting evidence and choosing which medical opinion she found to be best supported by the record. Again, her determination is supported by substantial—though perhaps not robust—evidence, and she adequately explained her evaluation of the prior administrative findings.

## IV. CONCLUSION

As set forth herein, the plaintiff's Objections (Doc. No. 21) will be overruled. The court will accept and adopt the R&R (Doc. No. 20) in its entirety and deny the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 13). An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge